UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**DR. AHARON GUTTERMAN, BATSHEVA
MARKOWITZ, NORTHEAST ANESTHESIA,
P.C., and AHARON GUTTERMAN MD PLLC,**

Plaintiff,

-against-

**MEMORANDUM DECISION
AND ORDER**
20-CV-1081 (AMD) (LB)

**PHILIP HERZOG and RICKY LOWENTHAL,**

Defendants.

-------------------------------------------------------------------X

**ANN M. DONNELLY**, United States District Judge:

The plaintiffs filed this action alleging violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") and related state law fraud claims in connection with the

orchestration of an alleged Ponzi scheme.[1]  Before the Court are the defendants' motions to

dismiss the plaintiffs' complaint.  For the reasons that follow, I grant the defendants' motions to

dismiss the action, but grant the plaintiffs leave to amend their complaint.

## BACKGROUND[2]

This action arises from a fraudulent investment scheme allegedly perpetrated by non-

party Leon Lowenthal, a licensed insurance broker, his father-in-law Philip Herzog and others, a

group that the plaintiffs call "the Lowenthal-Herzog Enterprise."  In 2014, Leon Lowenthal

asked his cousin, plaintiff Aharon Gutterman,[3] for a loan to help Lowenthal's elderly clients

---

[1] The plaintiffs filed this action in Kings County Supreme Court; the defendants removed the action to this Court on February 27, 2020. (ECF No. 1.)

[2] For purposes of this motion, I accept as true the factual allegations in the amended complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

[3] The plaintiffs say at another point in the complaint that Lowenthal asked "the plaintiffs" collectively for the loan. (ECF No. 1-1 at ¶ 54.)

1

purchase life insurance policies; he promised to repay the loans with what he claimed were lucrative commissions—between 108% and 120% of the first premium payment—that life insurance companies would pay him. (*Id.* at ¶¶ 34-38.) Lowenthal also represented that the insurance companies would pay the commissions "promptly," and that "Dr. Gutterman would not have to wait long to be repaid." (*Id.* at ¶ 40.)

According to the complaint, Herzog, a reputable wine distributor, "supplied signed checks drawn on [his] personal bank accounts, as collateral and guarantees for the loans." (*Id.* at ¶¶ 9, 11.) The plaintiffs also allege "upon information and belief" that Herzog "signed . . . checks and, through Lowenthal, provided them to Plaintiffs as false collateral" "with the intention of inducing plaintiffs to advance funds for the benefit of the Lowenthal-Herzog Enterprise," and that Herzog "knew these checks would not be honored and could not serve as adequate collateral." (*Id.* at ¶¶ 66, 69, 121.) Herzog signed four checks—two in 2014, one in 2016, and one in 2017—for a total of $1.085 million; in 2018, he signed a blank check.[4] (*Id.* at ¶¶ 66, 119-20.)[5]

The plaintiffs agreed to make the loans, and between 2014 and 2018 advanced $3.3 million to Leon Lowenthal. (*Id.* at ¶ 13.) After the initial advancement of funds, Lowenthal sent fraudulent documentation purporting to confirm the existence of the life insurance policies. (*Id.* at ¶¶ 42-44.) In fact, Lowenthal did not purchase insurance policies; rather, he used the money for personal expenses, to purchase real estate and to sustain an ongoing "Ponzi scheme." (*Id.* at ¶ 45.) Defendant Ricky Lowenthal, Leon Lowenthal's wife, also "used Plaintiffs' funds for her own purposes, including by paying her family's living expenses." (*Id.* at ¶ 169.) "From time to

---

[4] The plaintiffs also allege that Herzog participated in other schemes with Leon Lowenthal and "had a history of guaranteeing" Lowenthal's "ventures." (ECF No. 1-1 at ¶ 58.)

[5] The plaintiffs also allege that "some of Herzog's checks were blank." (ECF No. 1-1 at ¶ 10.)

time," the plaintiffs "received partial payments," which had "the intended effect of reassuring Plaintiffs that the Lowenthal-Herzog Enterprise was solvent and creditworthy and inducing Plaintiffs to advance more." (*Id.* at ¶ 63-64.)

The plaintiffs "at times expressed concerns about the Lowenthal-Herzog Enterprise's failure to repay" them in full. (*Id.* at ¶ 70.) Leon Lowenthal and Hershy Greenfield, who is also not a party, created various fake documents, including what purported to be wire instructions from insurance companies, insurance policy documents, copies of bank statements and bank account information, which Lowenthal then gave to the plaintiffs. (*Id.* at ¶¶ 70-83.) Hershy Greenfield emailed a false bank statement to Dr. Gutterman, and, on September 25, 2017, sent Batsheva Markowitz a password and username to get access to a bank account that Lowenthal set up, but never funded. (*Id.* at ¶¶ 80, 82.) At some point, the plaintiffs tried to cash Herzog's checks, "including the blank check written out for $70,000," but the checks were "dishonored" by the respective banks. (*Id.* at ¶ 18, 147.)

In March of 2019, plaintiff Batsheva Markowitz sent a text message to Ricky Lowenthal about the "funds the Lowenthal-Herzog Enterprise had failed to repay" and the suspected "Ponzi scheme." (*Id.* at ¶ 91.) After allegedly initially "feigning disbelief," Ricky "confirmed the existence of the Ponzi scheme" and "admitted knowledge" of the scheme; she promised to "get [her] father involved" in efforts to repay victims. (*Id.* at ¶¶ 92-95.) [6] Ms. Markowitz asked "what did [Leon Lowenthal] say happened to all the $;" Ricky replied, "Borrowing from #1 to pay back #2." (*Id.* at ¶¶ 96, 97.) Ricky also said that the Lowenthal-Herzog Enterprise hired a professional "who deals w/such type of matters, who will help him pay back all the guys & be in charge of this mess." (*Id.* at ¶ 98.) According to the complaint, this "professional"—whom the

---

[6] These do not appear to be verbatim quotes from the text messages.

plaintiffs do not identify—"was engaged to threaten victims" to dissuade them from taking legal action or "reporting the illegal conduct to law enforcement." (*Id.* at ¶ 99.) The "hired professional" "threatened Dr. Gutterman with physical harm and the loss of his medical license if he took legal action." (*Id.* at ¶ 100.)

In 2017, the "plaintiffs received $405,000 in repayments from an account in the name of Eli Rubenstein," another alleged victim of the Ponzi Scheme. (*Id.* ¶ 84.) Of the $3.3 million the plaintiffs advanced, Leon Lowenthal still owes the plaintiffs $1.787 million. (*Id.* ¶ 89.) Leon Lowenthal filed for personal bankruptcy in December of 2019.[7] (*Id.* ¶ 110.)

The defendants move to dismiss the complaint in its entirety. They say that the plaintiffs have not established standing, and that the RICO allegations are deficient.

### LEGAL STANDARD

"Determining the existence of subject matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010), and dismissal is proper under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* A court deciding a motion to dismiss pursuant to Rule 12(b)(1) may consider evidence outside of the pleadings, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), but must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

---

[7] *In re Leon Lowenthal*, Case No. 19-24115 (S.D.N.Y.).

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

In general, civil RICO actions must meet these well-known pleading requirements. Nevertheless, "courts are particularly mindful of these standards in the context of a civil RICO claim, the assertion of which has 'an almost inevitable stigmatizing effect on those named as defendants.'" *Curtis & Assoc. v. Bushman*, 758 F. Supp 153, 166 (E.D.N.Y. 2010) (citation omitted). "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Bell v. Hubbert*, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)) (internal quotation marks omitted). That is because defendants face the threat of treble damages as well as reputational damages as a consequence of being labeled "racketeers." *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009). For this reason, courts must "flush out" frivolous RICO complaints "at an early stage of the litigation." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). Moreover, courts "have expressed skepticism towards" civil RICO claims because plaintiffs bringing these cases "almost always miss the mark." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 408 (E.D.N.Y. 2017); *see also DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y.

2010) ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.")

Since the plaintiffs are alleging wire fraud as a predicate act, the RICO claims must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Curtis & Assoc.*, 758 F. Supp. 2d at 167. *See also*, *Targum v. Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *4 (S.D.N.Y. Nov. 19, 2013) ("All claims sounding in fraud—including those under RICO—must comply with Rule 9(b)'s heightened pleading standard.  Under Rule 9(b), a party must state with particularity the circumstances constituting fraud . . . .") (citations omitted).  Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).  Allegations based on "information and belief," without more, will not suffice.  Nor may the plaintiffs "rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." *Holmes v. Allstate*, 2012 WL 627238 at *23 (S.D.N.Y. 2012) (citing *Trustees of Plumbers*, 896 F.Supp 342, 347 (S.D.N.Y. 1995).  Thus, a plaintiff must allege that "each [d]efendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme." *Id.*

## DISCUSSION

A. <u>Article III Standing</u>[8]

To establish constitutional standing, each plaintiff must show (1) an injury-in-fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

---

[8] The defendants did not explicitly move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), but defendant Herzog requests that I dismiss this action for lack of standing.  "Although we

imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct about which each plaintiff complains; and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). "[T]he 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008).

Because "a plaintiff must establish his or her own injuries[,] a plaintiff seeking redress for alleged injuries inflicted on another person or entity has not established standing." *Lundstedt v. People's United Bank*, 2015 WL 540988, at *1 (D. Conn. Feb. 10, 2015). Accordingly, a plaintiff who "is injured only as a result of the injury to another . . . generally lacks standing." *Bingham v. Zolt*, 66 F.3d 553, 562 (2d Cir. 1995); *see also Warth v. Seldin,* 422 U.S. 490, 501 (1975) (to establish constitutional standing, each plaintiff must allege "a distinct and palpable injury to himself").

"To have Article III standing, *each* plaintiff must have suffered a concrete and particularized, actual or imminent injury-in-fact that would likely be redressed by the relief requested." *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 409 F. Supp. 3d 261, 266 (S.D.N.Y. 2019) (emphasis added). Rather than demonstrating that each plaintiff has

---

have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), *see Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir.1994); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n. 2 (2d Cir.1993), the proper procedural route is a motion under Rule 12(b)(1)." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006). "Because the Court has an independent obligation to apply the correct legal standard[,]" I construe the defendant's motion to dismiss for lack of standing as one pursuant to Rule 12(b)(1). *Matter of Trusts Established under the Pooling & Servicing Agreements relating to the Wachovia Bank Commercial Mortg. Tr. Commercial Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F. Supp. 3d 441, 446 (S.D.N.Y. 2019).

suffered an injury, the plaintiffs make general assertions about themselves as a group: that they collectively advanced approximately $3.3 million to Leon Lowenthal and are now collectively owed $1.78 million, that they were "from time to time" collectively repaid, that they collectively expressed concern about being repaid, and that they collectively presented Herzog's checks for deposit. It is not clear from the complaint who made the loans, whether any plaintiff has been repaid or whether each plaintiff has an interest in the outstanding balance.[9]

The plaintiffs do not allege that Batsheva Markowitz, Northeast Anesthesia P.C. or Aharon Gutterman MD PLLC loaned money to Leon Lowenthal. Indeed, the plaintiffs identify only one specific loan made during the four-year period alleged in the complaint: that in or around April of 2014, Leon Lowenthal asked "the plaintiffs" for an initial loan of $50,000.[10] (ECF No. 1-1 at ¶ 54.) While the plaintiffs allege that Leon Lowenthal gave Dr. Gutterman one of Herzog's checks as collateral for the loan, the plaintiffs do not allege that Dr. Gutterman himself made the loan. (*Id.* at ¶ 56.) If Dr. Gutterman did make the loan, the complaint does not establish that he suffered an injury-in-fact because the complaint also alleges that the plaintiffs have gotten some of their money back, leaving open the possibility that Leon Lowenthal repaid this loan and any loans Dr. Gutterman might have made individually in his name, leaving Dr. Gutterman with no loss to redress through this action.

Even if I were to accept the plaintiffs' argument that Dr. Gutterman is an agent of Aharon Gutterman MD PLLC and Northeast Anesthesia P.C.—which is not alleged in the complaint—it would not cure the deficiencies of the pleading. (ECF No. 22 at 16.) Neither company is alleged to have loaned money to Leon Lowenthal, nor is it alleged that Lowenthal owes either company

---

[9] The plaintiffs do not allege that any of them had direct contact with Herzog.
[10] At another point in the complaint, the plaintiffs allege that Leon Lowenthal asked Dr. Gutterman for the loan. (ECF No. 1-1 at ¶ 34.)

money. *Bingham*, 66 F.3d at 562 (because a corporate entity has "an independent legal identity," it must assert its own injury). The plaintiffs further ask that I assume that the companies "contributed to the loans at issue and suffered injuries alongside Dr. Gutterman and his wife," but plead no allegations that would make such an assumption plausible. [11] (ECF No. 22 at 16.)

Accordingly, the plaintiffs' federal claims are dismissed for lack of subject matter jurisdiction.

### B. RICO Claims

Under the RICO Act, 18 U.S.C. § 1962, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) ... participate[d] in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984).

Plaintiffs pleading a RICO claim have a high burden. *See Spited v. Russo*, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013). A plaintiff claiming fraud, as these plaintiffs are, must satisfy Rule 9(b)'s heightened pleading requirements. *Curtis v. Law Offices of David M. Bushman, Esq.*, 443 Fed. App'x 582, 584 (2d Cir. 2011). And if the plaintiff is suing more than one person for a substantive RICO violation, he must allege that each participant committed two or more predicate acts, and that the predicate acts are related, and either "amount to, or pose a

---

[11] Because the plaintiffs have not established that they are asserting their own legal rights, they likewise have not established prudential standing. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (Prudential standing requires a plaintiff to "assert his own legal rights and interests" and does not permit a plaintiff to "rest his claim to relief on the legal rights and interests of third parties.").

threat of, continuing criminal activity." *Targum*, 2013 WL 6087400 at \*5; *see also Jordan (Bermuda) Inv. Co. v. Hunter Green Investments Ltd.*, 154 F. Supp. 2d 682, 692 (S.D.N.Y. 2001) ("In the context of a RICO claim, each defendant must be alleged to have engaged in two or more predicate acts.") (citing *Lakonia Management Ltd. v. Meriwether*, 106 F.Supp.2d 540, 550 (S.D.N.Y.2000)).

As explained below, the complaint "is replete with problems." *Targum*, 2013 WL 6087400, at \*6. Not only does the complaint fail to allege the elements of a civil RICO claim, the meager allegations against the actual defendant in this case—Herzog—do not establish his participation in the alleged fraud. Almost all of the allegedly fraudulent acts were perpetrated by nonparties Lowenthal and Greenfield. The plaintiffs' efforts to link the alleged fraud to Herzog by labeling the group the "Lowenthal-Herzog Enterprise" does not change those facts; the allegations against Herzog are that he signed five checks over the course of four years, and that the checks were "dishonored" when the plaintiffs tried to deposit them at some unspecified time. Most of the allegations against Herzog are premised on "information and belief" without identifying the source of the information and belief. "Group pleading and allegations based on information or belief are especially inadequate under Rule 9(b)'s heightened pleading standard." *Targum*, 2013 WL 6087400, at \*6 (quotations omitted).

*i.   RICO Enterprise*

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise is distinct from the pattern of racketeering activity in which it engages, and must be proven as a separate element. *See United States v. Turkette*, 452 U.S. 576, 583 (1981). "Indeed, it is essential that the enterprise be distinct from the individuals comprising

it; to establish liability, the plaintiff must allege an enterprise that is not simply the same 'person'
referred to by a different name." *Foster v. 2001 Real Estate*, 2015 WL 7587360, at *3 (S.D.N.Y.
Nov. 24, 2015) (internal quotations and citation omitted).

The plaintiffs identify a single "association-in-fact" enterprise—the so-called
"Lowenthal-Herzog Enterprise"—consisting of "Lowenthal, Herzog, PW Insurance Agency
Corp., Prosperity LM Inc., Hershy Greenfield, and others[.]" [12] (ECF No. 1-1 at ¶ 31) An
association-in-fact enterprise is "a group of persons associated together for a common purpose of
engaging in a course of conduct," which "is proved by evidence of an ongoing organization,
formal or informal, and by evidence that the various associates function as a continuing unit."
*Turkette*, 452 U.S. at 583. This kind of RICO enterprise "must have at least three structural
features: a purpose, relationships among those associated with the enterprise, and longevity
sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*,
556 U.S. 938, 946 (2009). Absent these structural requirements, "any two thieves in cahoots
would constitute an association-in-fact." *Foster*, 2015 WL 7587360, at *4 (citation omitted).

Plaintiffs alleging a RICO enterprise "must provide solid information regarding the
hierarchy, organization, and activities of the alleged enterprise, from which the court could fairly
conclude that its members functioned as a unit. Lack of proof of such an independently existing
separate enterprise dooms a RICO claim." *Greenberg v. Blake*, 2010 WL 2400064, at *4
(E.D.N.Y. June 10, 2010) (quotations and ellipses omitted); *see also City of New York v.
Smokes–Spirits.com, Inc.*, 541 F.3d 425, 447 (2d Cir. 2008), *rev'd in part on other grounds*,
*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) ("In practice, the dual requirements of

---

[12] Ricky Lowenthal is not alleged to have been a member of the "enterprise," nor do the plaintiffs make
any RICO claims against her.

(1) distinctness and (2) the proof needed to demonstrate an association–in–fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact.")

The plaintiffs have not alleged an enterprise that exists independent of the alleged racketeering activity, and there is no basis to infer that defendant Herzog, Leon Lowenthal and others formed "an ongoing organization, formal or informal, let alone a coherent entity separate and apart from the alleged fraudulent scheme." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 304 (S.D.N.Y. 2017) (citation omitted).

In *Feinberg v. Katz*, the plaintiffs alleged that a father and son, along with other individuals and corporations, formed a RICO enterprise to loot corporate assets. 2002 WL 1751135 (S.D.N.Y. 2002). The court found that the plaintiffs did not plead sufficient facts to establish an enterprise, because "nearly all of the allegations in the Amended Complaint regarding the misappropriation scheme details acts of looting by [the son], not by [the father]." *Id.* at *14. The father was alleged to have committed only one fraudulent act during the purported enterprise—using "dummy invoices" to bill a private company for architectural work completed on his synagogue. *Id.* Apart from this allegation, "the only allegations against [the father were] conclusory, lumping him together with [the son] without supporting facts[.]" *Id.* The complaint also "faile[d] to set forth factual allegations that show that [the father] may have acted in concert with [the son] by direction or benefitting from" his acts. *Id.* at *15.

Here, as in *Feinberg*, the complaint "broadly avers" that Lowenthal and Herzog "jointly undertook" to perpetuate a Ponzi scheme, but "is devoid of facts suggesting" that Herzog "took part in or reaped the benefits of" Lowenthal's actions. *Id.* As noted earlier, the bulk of the plaintiffs' allegations are against people and entities they are not suing, including Leon Lowenthal and Hershy Greenfield. Herzog is alleged to have "endorsed" checks drawn on

assertedly underfunded bank accounts to serve as collateral in order to induce the plaintiffs to loan money to Lowenthal. As also noted above, calling it the "Lowenthal-Herzog Enterprise" does not cure the deficiency because the complaint does not establish that a "coherent entity" was actually formed. *Greenberg*, 2010 WL 2400064 at *6 ("Failure to distinguish the individual defendants from the alleged enterprise is fatal.")

Even if there were a "coherent entity," the complaint does not establish that Herzog participated in the "operation or management" of the enterprise, a requirement to establish that a defendant was part of an association-in-fact. *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, 2007 WL 1159637, at *8 (S.D.N.Y. Apr. 18, 2007). "While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit." *Aerowest GmbH v. Freitag*, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016) (citing *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001)). Under this standard, a defendant may not be held liable merely for taking directions and performing tasks that are "necessary and helpful to the enterprise," or for providing "goods and services that ultimately benefit the enterprise." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 451–52 (S.D.N.Y. 2004) (citations omitted). The plaintiffs do not allege that Herzog directed the alleged scheme or took any part in the management of the alleged enterprise. Moreover, and as noted above, the claims against Herzog are almost exclusively based on "information and belief," but the plaintiffs "fail[] to explain the 'information and belief' upon which [these] allegations [are] founded." *Malvar Egerique v. Chowaiki*, 2020 WL 1974228, at *13 (S.D.N.Y. Apr. 24, 2020) (citing *Pilkington North Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 142-43 (S.D.N.Y. 2019)).

The plaintiffs ascribe the fraudulent scheme and its attendant acts to the "Lowenthal-Herzog Enterprise," but give almost no information "regarding the hierarchy, organization, and activities of the alleged enterprise" to support the allegation that Herzog was a member and had operational responsibilities. *Continental Fin. Co. v. Ledwith*, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009) (citation omitted). While the complaint alleges that Lowenthal—who is not a defendant—approached Dr. Gutterman (or the plaintiffs as a group) about the loans, the pleadings are "entirely silent as to the internal workings or organization of the alleged enterprise[.]" *Greenberg*, 2010 WL 2400064, at *6. I cannot "fairly conclude that [the alleged enterprise's] members functioned as a unit," and therefore cannot assume that Herzog was part of an association whose common purpose was to engage in course of conduct. *First Capital Asset Mgmt., Inc, v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004).

### ii. Pattern of Racketeering Activity

Aside from the failure to allege a cognizable enterprise theory, the plaintiffs have not adequately alleged a pattern of racketeering activity. To establish a "pattern" of racketeering activity, a plaintiff must plead: (1) at least two predicate acts; (2) that are related; and (3) amount to, or pose a threat of, continuing criminal activity. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (internal citation omitted); *see also* 18 U.S.C. § 1961(5).

The plaintiffs allege that the "Lowenthal-Herzog Enterprise" committed wire fraud. (ECF No. 1-1 at ¶ 126). "The essential elements of [wire fraud] are (1) a scheme to defraud[;] (2) money or property as the object of the scheme[;] and (3) use of the mails or wires to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (citing *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). As a fraud-based predicate, the plaintiffs' claims must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See*

*Flexborrow LLC v. TD Auto Fin. LLC*, 2017 WL 2609605, at *10 (E.D.N.Y. June 16, 2017)

(citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999); Fed. R. Civ. P. 9(b)

("In alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake."). To comply with Rule 9(b)'s specificity requirements, "the complaint must:

(1) specify the statements that the plaintiff[s] contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v.

Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Although the plaintiffs allege that the enterprise collectively transmitted "dozens of

emails, text messages, and bank transfers over interstate wires, or wires routed interstate," they

give detail about only one purportedly fraudulent email, which Hershy Greenfield sent on

September 25, 2017, containing login information related to a bank account. (ECF No. 1-1 at ¶¶

82, 126.) Pleading a single predicate act is not enough to establish that members of the

enterprise engaged in a pattern of racketeering activity.[13] *See Trautz v. Weisman*, 809 F. Supp.

239, 244 (S.D.N.Y. 1992). Moreover, even assuming that the email was fraudulent, the plaintiffs

have not established it constitutes federal wire fraud. "[I]t is well-established that purely

intrastate communication is beyond the statute's reach and cannot serve as a predicate offense for

a RICO violation. *Targum*, 2013 WL 6087400, at *6 (quotations omitted). Here, all of the

---

[13] The plaintiffs allege that Hershy Greenfield and Leon Lowenthal provided copies of documents to the plaintiffs "using electronic mail," including a false bank statement that Greenfield sent to Dr. Gutterman. (ECF No. 1-1 at ¶ 80.) But they do not plead these claims with the requisite particularity because they have not specified a date on which the emails were sent. *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004) ("[A] claim of mail or wire fraud must specify the content, date and place of any alleged misrepresentation and the identity of the persons making them.") (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir.1990). The same is true of alleged text messages and bank wires assertedly sent "between 2014 and 2018." (ECF No. 1-1 at ¶ 127). If the plaintiffs did, in fact, receive these messages, they should be able to provide the dates on which they were sent.

parties are located in New York and the complaint does not allege that the communication was interstate. *See also*, *DeFazio v. Wallis*, 500 F. Supp. 2d 197, 204 (E.D.N.Y. 2007).

Nor have the plaintiffs alleged a pattern of activity. To demonstrate a pattern, the plaintiffs must allege that the predicate acts have "continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (internal citation omitted). The "continuity requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quotations and citations omitted).

Aside from the September 2017 Hershy Greenfield email, the complaint does not specify the time period over which the alleged wire fraud occurred. The Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time.'" *Spool*, 520 F.3d 178 at 184 (citation omitted). Pleading a single instance of alleged wire fraud in 2017 does not meet this threshold.

### iii. RICO Conspiracy

"The dismissal of a RICO action because the substantive claims are deficient compels that related charges . . . of conspiracy to violate RICO also must fail." *Gross v. Waywell*, 628 F. Supp. 2d 475, 500 (S.D.N.Y. 2009). Accordingly, because the plaintiffs have failed to state a

claim for substantive RICO violations, their allegations of RICO conspiracy must also be dismissed.

C. State Law Claims

I decline to exercise jurisdiction over the plaintiffs' remaining state law claims.[14] "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."); *see also Klein & Co. Futures. Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

---

[14] The plaintiffs bring only state law claims against defendant Ricky Lowenthal, based on a series of text messages between her and Batsheva Markowitz. Should the plaintiffs include these claims in an amended complaint, they are reminded that even the more lenient Rule 8 pleading standard requires them to state a claim that is "plausible on its face" and not based on an allegation showing a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Eng v. City of New York*, 715 F. App'x 49, 52 (2d Cir. 2017) ("[State-law] claims, brought in federal court, are subject to the federal pleading standard, and not the relaxed pleading standards of New York state courts.")

## CONCLUSION

Accordingly, the defendants' motions to dismiss are granted.  The plaintiffs are granted

leave to amend.  If the plaintiffs choose to file an amended complaint, they must do so within

thirty days.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      November 16, 2020

18